UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFONSO WILLIAM RAMOS II.,<br>Plaintiff,<br>v.<br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br>Defendant. | NO. CV 14-8050 KLS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Plaintiff filed a Complaint on October 24, 2014, seeking review of the denial of his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). (Dkt. No. 4.) On April, 23, 2015, Defendant filed an Answer to the Complaint. (Dkt. No. 13), and the Certified Administrative Record of Proceedings (Dkt. No. 14). On July 31, 2015, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and either remanding the matter for further administrative proceedings or ordering the payment of benefits. (Joint Stip. at 29.) The Commissioner requests that the ALJ's decision be affirmed. (*Id.*) On August 26, 2015 and October 15, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before

1

the undersigned United States Magistrate Judge. (Dkt. Nos. 20-22.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff was born April 14, 1971, which, under Social Security agency guidelines, is defined as a "younger individual age 18-49." (Administrative Record ("AR") 19, *see* 20 CFR §§ 404.1563, 416.963.) Plaintiff alleges disability since March 1, 2008 due to scoliosis, a right leg shorter than his left, obstructive sleep apnea, obesity, chronic pain, and organic mental disorder (depression) related to sleep apnea. (AR 12.) Plaintiff's past relevant work was as a longshoreman from 1995 – 2008. (AR 46.)

Plaintiff filed an application for DIB and SSI on February 8, 2012. (AR 10.) These claims were initially denied on June 6, 2012. (*Id*.) Plaintiff filed a written request for hearing on August 15, 2012. (*Id*.) Plaintiff was represented by counsel and testified before the ALJ at a hearing held on April 25, 2013. (*Id*.) No other witnesses testified at the hearing. (AR 26.) On May 13, 2013, the ALJ denied Plaintiff's claim, concluding Plaintiff was not under a disability from March 1, 2008 through the date of the decision. (AR. 20.) Plaintiff then timely commenced this action.

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five step sequential evaluation process outlined in 20 CFR 404.1520(a) and 416.920(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since March 1, 2008, the alleged disability onset date. (AR 12.) The ALJ found Plaintiff had severe impairments consisting of scoliosis, shorter right leg status post Achilles tendon lengthening, obstructive sleep apnea, obesity, and organic mental disorder related to sleep apnea. (*Id*.) The agency determined that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of a listed impairment in 20 CFR Par 404, Subpart P.  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work . . . except he is mentally limited to simple, repetitive work with no exposure to hazardous work conditions without safeguards."  (AR 13-14.)  At the last step of the evaluation process, the ALJ determined, taking into account Plaintiff's age, education, work experience and RFC that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform"  and on that basis concluded that Plaintiff has not been under a disability from March 1, 2008 through the date of the ALJ decision, May, 23, 2013.  (AR 19-20.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  "The ALJ

is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 798 F.3d 749, 754 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges the following three legal errors by the ALJ: (1) the ALJ failed to obtain Vocational Expert ("VE") testimony to identify specific jobs in the national economy that Plaintiff can perform (*see* Joint Stip. at 2, 3-5); (2) the ALJ improperly evaluated Plaintiff's treating physician's opinions and failed to properly develop the record as to the basis of those opinions (*id.* at 3, 11-14); and (3) the ALJ improperly evaluated plaintiff's subjective symptom testimony and credibility (*id.* at 3, 17-24).

**I.     The ALJ Did Not Err in Failing to Obtain Vocational Expert Testimony**

Plaintiff contends that the ALJ erred at step five in the sequential disability evaluation process by not engaging a VE to identify specific jobs that Plaintiff could perform consistent with Plaintiff's RFC. (Joint Stip. at 3-5.) Plaintiff's argument lacks merit. The ALJ used

the Medical-Vocational Guidelines (commonly referred to as the "grids")[1], to determine the availability of jobs in the national economy and did not engage the assistance of a VE. (AR 19.) Taking into account Plaintiff's age, education, work experience and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.*)

In the five-step sequential evaluation process for determining disability, once the ALJ concludes at step four that a claimant cannot return to his former work, the ALJ must then determine, in step five, whether there are jobs in the national economy that the claimant can perform consistent with any impairments and/or limitations identified at step two. *Gonzales v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). When a claimant has solely nonexertional limitations, the grids provide the framework for determining the claimant's RFC. The Ninth Circuit has held that "[a]t step five a vocational expert's testimony is required when a non-exertional limitation is 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (internal citation omitted) (affirming ALJ's denial of benefits where non-exertional limitations were not sufficiently severe to require the assistance of a vocational expert.). A vocational expert is only required when significant and "sufficiently severe" non-exertional limitations are not accounted for in the grid.[2] (*Id.*)

In this instance, substantial evidence supported the ALJ's determination that Plaintiff did not have sufficiently severe non-exertional limitations that prohibited the ALJ's reliance on the "grids" rather than the assistance of a VE. *See Hoopai v. Astrue*, 499 F.3d at 1075.

---

[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 2.

[2] Plaintiff argues that because the ALJ found certain severe impairments at step 2 that necessarily implies non-exertional limits that warrant use of a VE assistance at step 5. (Joint Stip. at 3-4.) Not so. A determination at step two that a claimant has a severe impairment (whether or exertional or nonexertional) is not dispositive at step five in determining what alternative work a claimant can perform. *Hoopai v. Astrue*, 499 F.3d at 1075. Different levels of severity are required in the step two and step five determinations. (*Id.* at 1076)

5

The ALJ concluded that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is mentally limited to simple, repetitive work with no exposure to hazardous work conditions without safeguards." (AR 13-14.) The ALJ found that Plaintiff had no restriction in activities of daily living; no difficulties in social functioning; only moderate difficulties with regard to concentration, persistence or pace; and he had experienced no episodes of decompensation of extended duration. (AR 13.) Substantial evidence in the record supports these conclusions where at the hearing before the ALJ, during questioning by his own counsel, Plaintiff acknowledged that he did not have any limitation that would keep him from doing a job involving much lighter work than a longshoreman. (AR 30.) Plaintiff also testified that he intends to go back to work. (AR 31.) Moreover, Plaintiff admitted that he felt capable of doing any job that did not involve "standing on my feel too long." (*Id*.) Both agency regulation and Ninth Circuit precedent permit the use of the grids under such circumstances. *Odle v. Heckler,* 707 F.2d 439, 440 (9th Cir. 1983) (citing *Heckler v. Campbell*, 461 U.S. 458 (1983).)

Indeed, the ALJ's decision detailed at least five reasons for his conclusions as to Plaintiff's RFC, all supported by the medical records. (AR 15.) Specifically, while Plaintiff has one leg shorter than the other, after surgery to stretch his Achilles tendon, the treating notes indicate that he exhibited "normal range of motion and sensation in the right foot" and follow up notes in March 2012 indicated Plaintiff "was doing well and improving two weeks after surgery." (AR 15; 238.) With regard to back pain, the treating records of Plaintiff's primary doctor indicated that in October 2012, Plaintiff could "toe touch 6 inches without pain" and "could walk without a limp if he tried. (AR 15; 116.) Finally, after undergoing treatment for obstructive sleep apnea in 2009, the records revealed no evidence that Plaintiff complained or had any residual complications from the procedure. (AR. 15.)

Plaintiff's additional argument that the ALJ should have identified specific occupations of DOT codes for occupations Plaintiff could perform also fails. As Defendant

correctly points out, the U.S. Supreme Court has held that it is not necessary for "the Secretary to introduce evidence of specific available jobs that [a claimant] could perform" as to do so "would limit severely her ability to rely on the medical-vocational guidelines." *Heckler v. Campbell*, 461 U.S. at 470 (1983).

## II.     The ALJ Did Not Err In Considering the Treating Physician's Opinion.

Plaintiff next contends that the ALJ did not properly consider the opinion of Plaintiff's treating physician Dr. Fleury. (Joint Stip. at 9-11.) Plaintiff maintains that the ALJ did not give adequate weight to Dr. Fleury's conclusion that Plaintiff was unable to work as a result of his various maladies. (Joint Stip. at 13.) In addition, Plaintiff argues that the ALJ mistakenly connected to Dr. Fleury a statement by Plaintiff's podiatrist Dr. Whitaker, who in a follow up examination after performing surgery to lengthen Plaintiff's Achilles tendon, signed a written authorization extending Plaintiff's time away from his job from 1/07/13 through 3/26/13. (AR 1021.) Dr. Whitaker's treating notes for March 26, 2013 also indicate "Pt wants to return to work; dmi for 4/1/ return." (AR 1016.)

As a general rule, the opinion of treating doctor is given greater weight than those of doctors who do not treat a claimant. *See Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1995). When the treating physician's opinions are not contradicted by another doctor, the opinions of a treating doctor may be rejected only for "clear and convincing" reasons. *Smolen v. Chater,* 80 F.3d 1273, 1283-84 (9th Cir. 1996). However, where there is "substantial evidence" in the record that contradicts the treating physician's opinion, then the opinion of the treating physician is no longer entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole. *See Batson v. Comm'r of SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004*)*. An ALJ

may properly reject a physician's opinions where the physician's conclusions do not "mesh" with the patient's objective data or history. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding that the incongruity between the limitations listed by the physician—which lacked support in the patient's medical records—provided a specific and legitimate reason for rejecting that physician's opinion of the patient's limitations); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly discounted physician's limitations as "not supported by any findings"). Moreover, an ALJ may properly reject a physician's opinion that conflicts with the physician's own treatment notes. *See Connett*, 340 F.3d at 875.

Here, the ALJ assigned no weight to Dr. Fleury's opinion that Plaintiff could not work from 2006 to 2013. The ALJ provided clear and convincing reasons for doing so based on the substantial evidence in the record that contradicted Dr. Fleury's opinion. Indeed, the ALJ identified at least thirteen separate reasons, each supported by the medical records, for according no weight to Dr. Fleury's opinion. First, Dr. Fleury's own treating notes indicate that in April 2008, Plaintiff "[n]eeds a form filled out for his job search, about what activities he can perform." (AR 827.) In October 2008, Dr. Fleury noted that Plaintiff "[w]ants a letter for work saying he has OSA." (AR 765.) In addition, the treating records of Dr. Michael Patrick Acord, M.D. indicate that Plaintiff missed a physical therapy session in May 2007 because of work. (AR 883, 884.) The ALJ, in discounting Dr. Fleury's opinion, also pointed to:

- Plaintiff's own testimony that he would be able to perform light work and that he had been trying to look for work. (AR 14);
- Dr. Whitaker's opinion that despite tenderness in the right foot and a shorter right leg, Plaintiff "has normal range of motion and sensation in the right foot (AR 15, 304);
- In March 2012, Plaintiff was "doing well and improving two weeks after surgery and was stable" (*id*, 238);

8

- In July 2012, Plaintiff "was getting stronger with occasional pain in the repair site causing him to limp and use crutches, but there was no edema and he had good strength against resistance." (*id*., 182);
- In March 2013, Plaintiff was "doing much better" with improved gait, and able to do double limb heel raise." (*id.,* 5;
- Post-surgery, Plaintiff "wanted to return to work" (*id*., 5);
- Dr. Whitaker's treating notes indicated that Plaintiff was limited to light duty work (*id*., 11);
- Dr. Fleury's own notes indicate that plaintiff could "walk without a limp, if he tried" and advised Plaintiff to walk daily without limping (*id.*, 116);
- the records showed no residual complications following procedures to correct obstructive sleep apneas and hypertrophy of the tonsil (*id*., 433);
- consulting examiner, Dr. Concepcion A. Enriquez, in 2008, found that Plaintiff to have "normal motor strength in all extremities, intact sensation, cerebellar, and reflexes and . . . . did not require an assistive device to ambulate." (*id.*, 5); and
- the ALJ noted that "no doctor found that [Plaintiff} has obesity that singly or in combination precludes all work activity. (*id*. at 16.)

It is well-settled in this circuit, that the ALJ need not give controlling weight to a treating physician whose opinions are inconsistent with treatment notes. *Connett*, 340 F.3d at 874; *see also Thomas v. Barnhart* , 278 F.3d 947, 957 (2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and in adequately supported by clinical findings."). Furthermore, contrary to Plaintiff's contention, the ALJ was not obligated to contact Drs. Fleury or Whitaker to further develop the record where the evidence was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (noting ALJ required to recontact a doctor "only if the doctor's report is

ambiguous or insufficient for the ALJ to make a disability determination") (internal citation omitted). Here, the reports from Drs. Fleury and Whitaker were neither ambiguous nor insufficient to support the ALJ's determination. Accordingly, the Court finds that the ALJ's decision to give little weight to Dr. Fleury's opinion is supported by substantial evidence in the record and free of legal error.

**III.    The ALJ Properly Considered Plaintiff's Testimony and Credibility.**

Plaintiff's third contention is that the ALJ improperly discounted his subjective symptom testimony and made improper credibility findings. (Joint Stip. at 17-24.) An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Id.* "General findings are insufficient." *Brown-Hunter*, 798 F.3d at 755 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Here, the ALJ concluded "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible." (AR 14.) Specifically, the ALJ noted that the medical records confirmed Plaintiff's history of low back pain and bilateral broken legs from a childhood motor vehicle accident as well as apparent scoliosis involving the thoracic and lumbar spines. (AR 14.) The ALJ pointed to March 2007 radiographs that showed "mild levoscoliosis of the

thoracolumbar spine with 15 degree curvature" and June 2008 radiographs of Plaintiff's right foot showing "hallux valgus with mild joint space narrowing at the first metatarsophalangeal joint." (AR. 15.) However, the ALJ noted that radiographs in May 2011 and December 2011 showed no abnormalities and "only showed degenerative changes in the foot with hallux valgus." (*Id*.) The ALJ pointed to follow up notes from Plaintiff's treating podiatrist, Jeffrey M. Whitaker, M.D., indicating that Plaintiff was "doing well and improving two weeks after surgery and was stable." (*Id.*) By mid-May 2012, Plaintiff was no longer using a cam walker and transitioning to orthotic shoes. (*Id.*) By March 2013, just a month before the hearing before the ALJ, Plaintiff's podiatrist's notes indicated that "[Plaintiff] wants to return to work; Dr. Whitaker noted a "dmi for 4/1/ return." (AR 1016/Ex. 20F at 5.)

At the hearing, Plaintiff testified that he had not worked in the past five years as a result of an injury to his leg. (AR 28.) He also testified that he had looked for lighter work and was "in the process of getting [his prior] job back." (*Id*.) Further, in finding Plaintiff was not under a disability, the ALJ concluded that "in activities of daily living, the claimant has no restriction" and specifically noted Plaintiff's ability to help care for his children. (*Id*. 13.) Significantly, when Plaintiff was asked at the hearing if he had sought out work where he could sit down, Plaintiff responded "I've been too busy with my kids." (*Id*. 29.) Further, as to any limitations caused by chronic pain, Plaintiff admitted that "I'm not really used to lying down because of pain." (*Id*. 33.) He testified that he took three prescribed pain medications, but these "completely remove the pain." (*Id*. 34.)

The ALJ also considered Plaintiff's complaint of daytime sleepiness and fatigue in light of the diagnosis of obstructive sleep apnea and hypertrophy of the tonsil. (AR 18.) However, the ALJ noted that after receiving a head and neck/uvulopalatopharyngolplasty and tonsillectomy on February 27, 2009, "[t]here is no evidence that the claimant complained of or experienced any residual complications." (AR 15.)

Although the conflict between plaintiff's testimony and the objective medical evidence cannot form the sole basis for the ALJ's adverse credibility determination, in this case, the ALJ did not err by finding that the conflict is one reason for discounting plaintiff's subjective symptom testimony. *See Burch*, 400 F.3d at 681. Here, the record supports the ALJ's finding that plaintiff's credibility was undermined by his favorable response to treatment for his shortened leg and sleep apnea and his own testimony regarding his ability to do light work. Accordingly, the ALJ's reasons for discounting plaintiff's subjective symptom testimony were clear and convincing and supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted. Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: October 16, 2015

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE